UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HERBERT H. ROWE AND
CAROL G. ROWE                                    CIVIL ACTION

V.                                               NO. 18-75

UNITED STATES OF AMERICA                         SECTION "F"

## ORDER AND REASONS

Before the Court is the government's motion to dismiss the plaintiffs' petition to quash summonses. For the following reasons, the motion is GRANTED.

**Background**

This litigation arises out of summonses issued by the IRS to three banks to obtain a Louisiana church's financial records in connection to an investigation of the tax liability of the church's pastors.

Herbert and Carol Rowe are a married couple employed as pastors at the Upperroom Bible Church in New Orleans, Louisiana. Upperroom is a Louisiana nonprofit church corporation and is federally tax-exempt. In April 2017, IRS Agent Donald Thomas was assigned to conduct an investigation of the Rowe's tax liability for the 2011 tax year. The Rowes had not filed a federal income tax return for 2011, or any year since 1996, but filed a 2011 return after Agent Thomas contacted them about his investigation. The Rowes also submitted bank records from two accounts at Regions

1

Bank, pursuant to an information document request from the IRS. The Rowes represented that the Regions accounts were their only personal bank accounts. After reviewing the bank records and their tax return, the IRS identified inconsistencies. On December 11, 2017, Thomas issued IRS administrative summonses to J.P. Morgan Chase Bank, Liberty Bank and Trust, and Regions Bank. The bank accounts at J.P. Morgan Chase Bank and Liberty Bank and Trust were opened and are owned, held, and operated solely by the Church, but the Rowes have signatory authority over the accounts. The bank account with Regions Bank is owned by the Rowes. The IRS directed the banks to appear at the New Orleans IRS office on January 8, 2018 to give testimony and produce the requested records for examination.

The summonses were broad in their request, asking the banks to provide: (1) savings account records, including dates and amounts of deposits, withdrawals, interest, debit memos, and deposit and withdrawal slips; (2) checking account records, including deposit slips, checks deposited, and records of all debit and credit memos; (3) loan records, including applications, financial statements, loan collateral, background investigations, settlement sheets, and internal bank memoranda; (4) safe deposit box records, including contracts, access records, and records of rental fees; and (5) certificates of deposit, money market certificates, and retirement accounts, including applications,

actual instruments, and records of purchases and redemptions; (6) U.S. Treasury notes and bills, including all records of the purchase of U.S. Treasury bills and notes and any subsequent sale of such bills and notes, checks used for the purchases and sales, and records of any interest paid; (7) stocks and bonds, including all agreements, contracts, mutual fund accounts, and commodity accounts; (8) credit card records, including background investigations conducts and monthly billing statements; and (9) other records, including wire transfers, letters of credit, bonds and securities purchased through the bank, savings bond transactions, and investment accounts, among others. On January 2, 2018, the Rowes filed a petition to quash summonses. The government moved to dismiss the petition to quash summonses on March 2, 2018.

I.

"Congress has endowed the IRS with broad authority to conduct tax investigations," under 26 U.S.C. § 7602. United States v. El Paso Co., 682 F.2d 530, 544 (5th Cir. 1982); 26 U.S.C. § 7602. For a summons to be enforceable, the IRS must show that (1) the summons was issued for a "legitimate purpose;" (2) the sought-after information "may be relevant" to that purpose; (3) the IRS is not already in possession of the information; and (4) the IRS has followed the administrative steps required by the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-58 (1964). The

government's burden to produce a prima facie case by satisfying the Powell test is said to be "slight or minimal" and "can be fulfilled by a 'simple affidavit' by the IRS agent issuing the summonses." Mazurek v. United States, 271 F.3d 226, 230 (5th Cir. 2001). Reviewing "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'overseeing the IRS's determinations to investigate.'" United States v. Clarke, 124 S.Ct. 2361, 2367 (quoting Powell, 379 U.S. at 56). In fact, "[t]he Supreme Court has 'consistently [held] that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies.'" El Paso, 682 F.2d at 544 (quoting United States v. Euge, 444 U.S. 707, 711 (1980)).

Determining the correctness of a return and an individual's tax liability are both legitimate reasons to issue an IRS summons. 26 U.S.C. § 7602; Maxton, 103 F.3d at *2. The second factor requires that the information be relevant, but the IRS is not "required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984); Zugerese Trading LLC v. I.R.S., 336 Fed. Appx. 416, 418 (5th Cir. 2009)("The concept of relevance under § 7602 is broader than that under the Federal Rules

4

of Evidence."). Instead, the IRS is permitted "to obtain items of even *potential* relevance to an ongoing investigation." Arthur Young, 465 U.S. at 814. The Fifth Circuit has held that "the test of relevancy is whether the summons seeks information which 'might throw light upon the correctness of the taxpayer's return,'" and instructs that the IRS must have a "realistic expectation rather than an idle hope that something might be discovered." United States v. Wyatt, 637 F.2d 293, 300 (5th Cir. 1981)(quoting Foster v. United States, 265 F.2d 183, 197 (2d Cir. 1959))(additional internal citations omitted). For example, if the IRS is examining the correctness of a return, "[r]ecords that illuminate any aspect of the return" would be "highly relevant." Id.

The third factor does not bar the government from seeking information that may include documents it already obtained. Instead, it only prohibits summonses that "constitut[e] an unnecessary examination or inspection." United States v. Groos Nat. Bank of San Antonio, 661 F.2d 36, 37 (5th Cir. 1981). Finally, the fourth factor requires that the government comply with the procedural requirements provided in the Internal Revenue Code. This includes the requirements for service under Section 7603 and for notice required by Section 7602(c). If the government satisfies the Powell factors, the petitioner must "fulfill his 'heavy' burden of rebutting the [IRS's] case by either undermining [its] contentions regarding any of the Powell factors or by demonstrating

5

that enforcement of the summons would result in an 'abuse' of the court's process." Mazurek, 271 F.3d at 230.

II.

A.

As a preliminary matter, the Court turns to the Church Audit Procedure Act, which limits the manner in which the IRS can conduct investigations of churches, to determine if the statute controls. CAPA restricts both church tax inquiries and church tax examinations. The statute defines church tax inquiries as "any inquiry to a church (other than an examination) to serve as the basis for determining whether a church (A) is exempt from tax under section 501(a) by reason of its status as a church, or (B) is carrying on an unrelated trade or business . . . or otherwise engaged in activities which may be subject to taxation under this title." 26 U.S.C. § 7611(h)(2). CAPA only permits church tax inquiries if an "appropriate high-level Treasury official reasonably believes" that the church may not be exempt from tax or may be carrying on an unrelated trade or business that is taxable and the inquiry notice requirements have been met. 26 U.S.C. § 7611(a)(1)-(2). The statute requires the Secretary to provide written notice to the church at the beginning of the inquiry that includes an explanation of the concerns that gave rise to the inquiry, the general subject matter of the investigation, and a

6

general explanation of the applicable legal considerations that are relevant to the inquiry. 26 U.S.C. § 7611(a)(3). A church tax examination is defined as "any examination for the purposes of making a determination . . . of (A) church records at the request of the Internal Revenue Service, or (B) the religious activities of any church." 26 U.S.C. § 7611(h)(3). CAPA only permits church tax examinations into church records "to the extent necessary to determine the liability for, and the amount of, any tax imposed by this title." 26 U.S.C. § 7611(b)(1)(A). It only allows examination into religious activities "to the extent necessary to determine whether an organization claiming to be a church is a church for any period." 26 U.S.C. § 7611(b)(1)(B). Additionally, to conduct a church tax examination, the Secretary of the Treasury must provide notice to the church of the records it seeks to examine at least 15 days before the examination, and offer to participate in a conference between the church and the Secretary to attempt to resolve any concerns. 26 U.S.C. § 7611(b)(3).

The petitioners contend that the summonses amount to an unauthorized audit of the church and that the IRS has ignored the protections required by Section 7611. The government counters that CAPA only protects against church inquiries and examinations, and the IRS is pursuing neither. The IRS is not investigating the church to determine its tax liability. Instead, it contends that it only seeks information from the church in furtherance of its

investigation of the Rowes personally. And that the plain language of the statute precludes its application to third-party inquiries. The Court agrees.

The statute restricts church tax inquiries and examinations, not all investigations that involve a church. Here, however, the purpose of the investigation is to determine the tax liability of the Rowes; the IRS seeks the church records as a means to accomplish that purpose. Further, Section 7611(h)(4) defines church records as "all corporate and financial records regularly kept by a church, including corporate minute books and lists of members and contributors." 26 U.S.C. § 7611(h)(4)(A). It goes on, "[s]uch term shall *not* include records acquired . . . pursuant to a summons to which section 7609 applies." Although the Fifth Circuit has not addressed this specific issue, courts routinely hold that Section 7611 protects churches from inquiry into their tax liability, but does not immunize them from summonses issued in connection to an investigation of a third party, such as a church employee. Kerr v. United States, 801 F.2d 1162, 1163-64 (9th Cir. 1986)(holding that Section 7611 did not apply to summonses to a church's financial records when the IRS was investigating a taxpayer that had signatory authority over the church's bank accounts); Bishop v. United States, No. 98-25, 1999 WL 357939, at *4 (N.D. Fla. Mar. 18, 1999)("On the basis of Section 7611(i)(2), the courts have held that where the IRS is examining the tax

liability of an individual, such as a church founder, rather than the church itself, Section 7611 does not apply."); ("Third-party summonses are governed by Section 7609, not Section 7611, even when the summons is issued in connection with a church tax inquiry."); Pennington v. United States, Civ. No. 9-870, 2014 WL 417410, at *4 (W.D. Tex. Jan. 29, 2010); Bible Study Time, Inc. v. United States, 240 F. Supp. 3d 409, 420 (D.S.C. 2017).

The petitioners contend that the government is attempting to circumvent the statutory requirements of Section 7611 by pursuing the church's documents through a third-party summons. Regardless of the IRS's intentions, the Court is bound by CAPA's plain language, supported by the case literature, which limit the protections of Section 7611 to investigations into a church's tax liability. Because the IRS represents that its investigation is centered on the Rowes, not the church, CAPA is inapplicable.

B.

The IRS satisfies each factor of the Powell test by submitting a sworn affidavit by Internal Revenue Agent Thomas, and the petitioners fail to fulfill their burden of undermining Thomas's submissions or demonstrating that enforcement of the summons would result in an abuse of this Court's process. The purpose of the summonses is to aid in Agent Thomas's investigation into the Rowe's

tax liability for 2011. This is an undisputed legitimate purpose, satisfying the first element.

The Thomas affidavit satisfies the second factor by demonstrating that the information "may be relevant" to determine the Rowes tax liability. The government contends that the Rowes bank records contain several inconsistencies that warrant further investigation, such as: (1) petitioners claimed to have made significant charitable contributions in 2011, but those amounts are not supported by the Regions record; (2) Regions documents do not reflect typical grocery and restaurant expenditures; and (3) Herbert Rowe reported that he sold stock he held personally for $356,024, but there is no record of the proceeds being deposited into the Regions account. Agent Thomas states that the summoned records may show whether the Rowes received unreported income or benefits from any source, have claimed deductions to which they are not entitled, or have access to other accounts which may show similar information. He questions whether the Rowes used the church's accounts to pay their personal expenses or made transfers to other accounts held for their own benefit, and he contends that the additional information will provide needed clarity.

The petitioners counter that the summonses are overbroad and unnecessary. They address each alleged inconsistency with documentation to support their explanation. They argue that the summonses should be quashed until the IRS first attempts to resolve

their issues using less invasive measures, like directing their questions to the Rowes and their counsel.[1] Furthermore, they argue that the summonses seek such a vast amount of the church's sensitive information to answer a few discreet questions that could be addressed through other measures.[2] But the petitioners ask the

---

[1] The Rowes point out that the IRS never raised any questions or issues regarding the investigation until the motion to dismiss, and contend that all of the alleged "inconsistencies" can be explained by documentation provided by the Rowes. For instance, Agent Thomas is concerned that the Regions bank account records do not reflect a deposit of the proceeds from a $356,024 stock sale that was disclosed in their tax return. The Rowes state that there is no record of a deposit because the proceeds were immediately reinvested without passing through their personal bank account. Had the IRS asked the Rowes for an explanation, they contend, its concerns would have been adequately addressed.

[2] The Rowes contend that the demand for a large quantity of information to answer a few questions constitutes a "fishing expedition." The Rowes argue that this is especially alarming given "legitimate First Amendment concerns."

    The Fifth Circuit has enforced summons against a church's bank accounts, pursuant to an investigation into that church's minister, when the summons specified the types of documents, the taxpayer was the signatory, and the scope was for a restricted time span. United States v. Grayson County State Bank, 656 F.2d 1070, 1074 n.5. The court determined that "allowing the IRS access to information to determine the correct tax liability of the taxpayer, the church's minister, does not restrict the church's freedom to espouse religious doctrine nor to solicit members or support." Id. at 1074. Moreover, it determined that "the substantial government interest in maintaining the integrity of its fiscal policies . . . justif[ies] any incidental infringement of [the petitioner's] First Amendment rights." Id. (quoting United States v. Holmes, 614 F.2d 985, 989-90). When the summonses meet the Powell factors, and there is "no evidence that enforcement of the summons would restrict the religious activities of its members," they are enforceable. Id. Likewise, the summonses here is limited to the 2011 tax year and the taxpayers were the signatories. Furthermore, nothing indicates that the IRS is attempting to chill the church's religious practice.

11

Court to obligate the IRS in ways that <u>Powell</u> does not require. The IRS is not required to select the least intrusive means to investigate any discrepancies or inconsistencies it has identified in a tax return. The Supreme Court has repeatedly upheld the IRS's broad power to investigate; the Court cannot restrict that authority on the basis that the IRS failed to narrowly tailor their summonses, absent statutory direction. The only obligation before the IRS is to show that the information sought "may throw light" on the accuracy of the Rowes' tax return. And it does. The Rowes had signatory authority to the church's accounts, and there was an exchange of funds between the church's accounts and their personal accounts, so the IRS can realistically expect that the church financial records might clarify any inconsistencies the IRS has identified in the Rowes Regions account.

It is uncontested that the IRS is not in possession of the church records from J.P. Morgan Chase Bank and Liberty Bank and Trust. The Rowes provided Agent Thomas with some account documents relating to two accounts they hold at Regions Bank. Because the IRS requests the Regions Bank account records to ensure that they have all relevant account information, which is relevant to the purpose of their investigation, and the request is not unnecessary, the IRS satisfies the third factor. Finally, the IRS satisfies the fourth element by taking all administrative procedural steps required by the Internal Revenue Code. Agent Thomas served an

attested copy of each summons on each bank by certified mail, in accordance with 26 U.S.C. § 7603(a). He gave notice of the summonses to the Rowes designee by sending copies through certified mail on December 11, 2017, pursuant to Section 7609(a)(1). And the revenue agent assigned to the case gave the petitioners notice of third-party contact, as required by Section 7602(c). Agent Thomas's affidavit adequately addresses each Powell factor.

Accordingly, IT IS ORDERED: that the government's motion to dismiss the petitioners' motion to quash is GRANTED. IT IS FURTHER ORDERED: that the petitioners' petition to quash is DENIED.

New Orleans, Louisiana, May 16, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE